IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

EDGAR BERTRAM POWERS,

   Plaintiff,

   v.

THE PAUL REVERE LIFE
INSURANCE COMPANY,

   Defendant.

CIVIL ACTION FILE
NO. 1:04-CV-1317-TWT

OPINION AND ORDER

This is an action seeking to recover on a disability insurance policy. It is before the Court on the Defendant's Motion for Summary Judgment [Doc. 31]. For the reasons set forth below, the Defendant's Motion is GRANTED.

I. BACKGROUND

The Plaintiff, Dr. Edgar Powers, practiced family medicine with Gwinettt Medical Clinic, P.A. from 1978 until 1989. In 1983, the Plaintiff applied to the Defendant, Paul Revere Life Insurance Company, for insurance to protect him from loss due to disability. As issued, the Plaintiff's insurance policy provided for benefits of $6,000.00 per month in the event of total disability. The Plaintiff also applied for four amendments to the policy that were listed on the application and issued as part

of the policy. These included a Future Income Option Benefit Rider, a Lifetime Total Disability Benefit Rider, a Total Disability in Your Occupation Rider, and a Supplemental Disability Benefit Rider. The Plaintiff did not apply for a Cost of Living Allowance ("COLA") rider.

The policy also included several limitations. A clause captioned "Definitions" established that the policy was the entire agreement between the insurer and the insured and clarified that the contract would include only "the policy, the application, the Policy Schedule, and any attached papers that We call riders, amendments, or endorsements." (Compl., Ex. 1.) A clause captioned "Changes to the Policy" stated that no changes could be made to the policy unless "approved in writing on the Policy by one of Our officers." (Id.)

In April 1985, the Plaintiff received an amendment to the policy. The Defendant mailed to the Plaintiff a single page, two-sided document. (Compl., Ex. 2.) On one side was a letter explaining that two improvements had been made to the Plaintiff's coverage.[1] The policy language that provided these improvements was printed on the reverse side under the title, "Amendment to Policy." The signatures of both the Defendant's secretary and its president were printed at the bottom of this page.

---

[1] The improvements included an enhancement of the policy holder's Residual Disability benefit to make it inflation-proof and the addition of a Return to Work benefit.

Later that year, the Plaintiff received a letter dated August 27, 1985, that was addressed personally to him and printed on Paul Revere letterhead. The letter detailed several improvements to his policy, including an alleged change to COLA benefits. Specifically, the letter stated, "[t]he Cost of Living feature in your contract will increase your benefits by 7% per year until age 65 if you are disabled." (Compl., Ex. 3.) The letter was signed "Joshua A. Ovett, Senior Brokerage Representative." (Id.)[2] In July of 2001, the Plaintiff notified the Defendant of his disability and requested that the Defendant initiate disability benefits pursuant to the policy. In December 2001, the Defendant began paying monthly disability benefits to the Plaintiff, but denied the Plaintiff's demands for additional payment of any COLA benefits.

On May 12, 2004, the Plaintiff filed this lawsuit against the Defendant for breach of contract, promissory estoppel, bad faith denial of claims, and stubborn litigiousness (attorney fees and expenses). The Defendant now moves for summary judgment on all claims.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists

---

[2]Mr. Ovett was employed by the Defendant as a Senior Brokerage Representative from approximately 1982 to 1990. (Ovett Aff., p. 2.)

and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

### III. DISCUSSION

A.   Breach of Contract

The Defendant seeks summary judgment on the Plaintiff's claim that the Defendant breached the contract by refusing to pay COLA benefits. Under Georgia law, "[i]nsurance is a matter of contract law and contract rules and interpretations will apply." Life Ins. Co. of Virginia v. Conley, 181 Ga. App. 152 (1986). Moreover, it is the legal duty of the insured "to examine his contract of insurance, observe what coverage is provided, and if the coverage is not correct, to either reject the policy as written, when tendered, or renegotiate the contract with the insurer." Id. at 153. The first rule of contract construction states that, where the terms of the contract are clear and unambiguous, "the court enforces the contract according to its terms irrespective

of all technical or arbitrary rules of construction." <u>Mon Ami Intern., Inc. v. Gale</u>, 264 Ga. App. 739, 741 (2003).

The language of this contract is clear and unambiguous. It specifically states that the policy is comprised only of specified documents including "any attached papers We call riders, amendments, or endorsements." (Compl., Ex. 1.) Furthermore, the "Changes to Policy" clause stated that "[n]o one, <u>including Our agent</u>, has the right to change or waive any part of this Policy unless the change is approved in writing on the Policy by one of Our officers." (<u>Id.</u>) (emphasis added). The express terms of the contract thus clarified that the policy constituted the complete agreement between the parties and could not be changed without written affirmation on the policy by an officer.

Due to this express language, the letter from Mr. Ovett could not and did not alter the terms of the policy so as to add a COLA feature. The Plaintiff concedes that Mr. Ovett was an agent, not an officer, of the Defendant, (Pl.'s Resp. to Def.'s Mot. for Summ. J., p. 16), and that Mr. Ovett never represented to the Plaintiff that he was an officer. (Powers Dep. at 80.) Georgia courts have repeatedly held that an insurance company can contractually limit the powers of its agent to alter the terms of the contract. <u>See, e.g.</u>, <u>Hawkins Iron & Metal Co., Inc. v. Continental Ins. Co.</u>, 128 Ga. App. 462 (1973); <u>Fowler v. Liberty Nat'l Life Ins. Co.</u>, 73 Ga. App. 765 (1946);

Reliance Life Ins. Co v. Hightower, 148 Ga. 843 (1919). Here, the Plaintiff acknowledged that he read the policy in its entirety upon receipt. He admits that he never applied for nor paid any premiums on a COLA benefits feature as part of the policy. (Powers Dep. at 54-55.) Therefore, the Defendant is not liable for any assurances by its agent, Mr. Ovett, concerning the addition of COLA benefits. A COLA provision was not added to the policy at the time the Plaintiff applied and paid for the other riders, and it could not have been added by Mr. Ovett's letter. Thus, summary judgment for the Defendant on the breach of contract claim is warranted.

B.    Promissory Estoppel

The Defendant also moves for summary judgment on the Plaintiff's promissory estoppel claim. Under Georgia law, "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise." O.C.G.A. § 13-3-44(a). "Based on this language, the elements of a promissory estoppel cause of action are: (1) defendant made certain promises, (2) defendant should have expected that plaintiff would rely on such promises, (3) the plaintiff did in fact rely on such promises to [his] detriment, and (4) injustice can be avoided only by enforcement of the promise." Houston v. Houston, 267 Ga. App. 450, 451 (2004). The Court finds that, here, the

Defendant did not make any promises to the Plaintiff regarding the addition of a COLA benefit.

Furthermore, even if we are to assume that the letter from Mr. Ovett constituted a promise, it was not reasonable for the Plaintiff to rely on that promise.

> [Reasonable reliance] means that the plaintiff relied exclusively on such promise and not on his or her own preconceived intent or knowledge; that the plaintiff exercised due diligence, so as to justify reliance as a matter of equity; and that there was nothing under the circumstances which would prevent the plaintiff from relying to his detriment.

DPLM, Ltd. v. J.H. Harvey Co., 241 Ga. App. 219, 221-222 (1999).  Here, the circumstances prevented the Plaintiff from reasonably relying on Mr. Ovett's letter. The contractual language in the policy clearly established the requirements for changing its terms.  See Gerdes v. Russell Rowe Commc'ns, Inc., 232 Ga. App. 534 (1998) (holding that the plaintiff could not have reasonably relied on a subsequent oral promise where a written agreement specifically stated that it could be altered only in writing).

Morever, prior changes to the policy demonstrated to the Plaintiff how the policy's amendment requirements would be met.  The riders initially added to the policy and the Defendant's April 1985 "Amendment to Policy" letter clearly demonstrated all the threshold requirements under the policy's "Changes to Policy" clause.  (Compl., Ex. 1.)  Both prior documents contained the signatures of the

Defendant's secretary and president. (Compl., Ex. 1-2.)  Both also contained captioned headings indicating that they were intended as additions to the policy.  (Id.)[3] These important characteristics fully comply with the requirements established in the original agreement.  Mr. Ovett's letter, by contrast, not only lacked the signature of any officer of the company, but was also devoid of any contractual language or explicit reference to the policy.  Comparing these valid amendments to Mr. Ovett's letter provided the Plaintiff with ample indication that the letter could not change the policy.  Therefore, even if Mr. Ovett's letter made a promise of COLA benefits, the Plaintiff could not have reasonably relied upon that promise.  The Plaintiff's promissory estoppel claim thus fails as a matter of law.

      C.     Bad Faith Denial of Claims

The Plaintiff also makes a claim for bad faith pursuant to O.C.G.A. § 33-4-6. The statute provides that where an insured party makes a claim on the policy and the insurer refuses to pay in bad faith, the insured is entitled to full payment plus "not more than 50 percent of the liability of the insurer for the loss or $5,000.00, whichever

---

[3]On the front side of the April 1985 amendment, the document even stated, "this letter should be filed with your policy." (Compl., Ex. 2.)

is greater, and all reasonable attorney's fees for the prosecution of the action against the insurer." O.C.G.A. § 33-4-6(a). However, "as a matter of law, bad faith penalties and attorney fees under OCGA § 33-4-6 are not awardable if an insurer has a reasonable and probable cause for refusing to pay a claim." Progressive Am. Ins. Co. v. Horde, 259 Ga. App. 769, 770-771 (2003). Because the Defendant acted reasonably in denying the Plaintiff's claim, the Plaintiff has no legitimate claim of bad faith and summary judgment is merited.

   D.   Attorney's Fees

The Defendant also moves for summary judgment on the Plaintiff's claim for attorneys fees under O.C.G.A. 13-6-11. For a breach of contract claim under Georgia law, however, "the exclusive remedy for an insurance company's bad faith refusal to pay a claim is set forth in OCGA § 33-4-6."[4] Anderson v. Georgia Farm Bureau Mut. Ins. Co., 255 Ga. App. 734, 737 (2002). Thus, summary judgment is warranted on this claim.

## IV. CONCLUSION

---

[4] Although not applicable here, Georgia courts have held that, where the "insurer's conduct exposed the insured's property to loss," the insured may also bring a tort claim for bad faith failure to settle. Canal Indem. Co. v. Greene, 265 Ga. App. 67, 73 (2003).

For the reasons set forth above, the Defendant's Motion for Summary Judgment [Doc. 31] is GRANTED.

SO ORDERED, this 19 day of October, 2005.

/s/Thomas W. Thrash

THOMAS W. THRASH, JR.

United States District Judge